## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### CONCISE SUMMARY OF THE CASE

Pursuant to 3rd Cir. LAR 33.3, counsel are required to file a concise summary of the case within **14** days of the date of docketing of the Notice of Appeal. Total statement is limited to no more than 2 pages, single-spaced.  Counsel may utilize this form or attach a 2 page statement encompassing the information required by this form.

SHORT CAPTION: Lauri Gordon v. Bank of America, N.A., et al.

USCA NO.: 17-2028

LOWER COURT or AGENCY and DOCKET NUMBER:
U.S. District Court of New Jersey

NAME OF JUDGE: William J. Martini, U.S.D.J.

Specify who is suing whom, for what, and the subject of this action.  Identify (1) the nature of the action; (2) the parties to this appeal; (3) the amount in controversy or other relief involved; and (4) the judgment or other action in the lower court or agency from which this action is taken:

This is a Consumer Rights lawsuit.

The parties to the appeal are: Plaintiff Laurie Gordon and Defendants Bank of America, NA, Seterus, Inc. and Federal National Mortgage Association.

The amount in controversy exceeds $250,000.

The appeal is brought from an Order granting Defendants' motion to dismiss for violation of the Rooker Feldman Doctrine, among other grounds.

LIST and **ATTACH** a copy of each order, judgment, decision or opinion which is involved in this appeal.  If the order(s) or opinion(s) being appealed adopt, affirm, or otherwise refer to the report and recommendation of a magistrate judge or the decision of a bankruptcy judge, the report and recommendation or decision shall also be attached.

This is an appeal of the Order and Opinion of the Hon. William J. Martini, USDJ on April 12, 2017.

The Order and Opinion (Docket entries 39 and 40) are attached.

Provide a short statement of the factual and procedural background, which you consider important to this appeal:

In 2010, Plaintiff entered into a loan modification agreement with then mortgage servicer and loan owner Bank of America. Bank of America breached the loan modification agreement and improperly declared the Plaintiff in default.

The parties tried to resolve the dispute but the servicing of the loan was taken over by Seterus, Inc. who filed for foreclosure. Plaintiff raised the issues in this lawsuit before the foreclosure Court but the foreclosure judge directed that only the issue of standing to sue in foreclosure would be heard in the foreclosure docket. The Court instructed that other matters, including the issues raised in the case on appeal, be heard separately in another court.

Plaintiff thereafter filed the Complaint in this matter, Defendants filed their Motions to Dismiss and the Court granted the motion to dismiss, mainly on the determination that the Plaintiff's complaint was barred by application of the Rooker Feldman Doctrine. The Court relied on the recent Third Circuit decision Monclova v. US Bank N.A., No. 16-cv-3677, 2017 WL 118015, at *1 as the main basis for concluding that the Court lacked subject matter jurisdiction.

Identify the issues to be raised on appeal:

The Court's reliance on the Monclava decision, Id., was error. In the case below, the Foreclosure Court determined that the breach of modification, consumer fraud and related issues were not part of the foreclosure case and declined to hear the dispute. The Court directed Plaintiff Gordon to bring those issues and claims in a separate tribunal.

Pursuant to the Foreclosure excpetion to the Entire Controversy Doctrine, set forth at R. 4:64-5, the foreclosure court has the right to determine whether any claim is germane or non-germane. The Court also has the right to sever all claims, including germane claims, from the foreclosure litigation so that the issues may be resolved in a separate tribunal. That is what happened in the case below, and the Court's determination that all cases arising out of state foreclosure litigation are barred by the Entire Controversy Doctrine as a result of the Monclava decision, was error.

Further, the Monclava decision was issued by the Third Circuit in error as the Court applied the incorrect standard as to which claims must be brought before foreclosure court and which claims may be brought elsewhere.

Finally, the issue of germane vs. non-germane claims to a foreclosure case - affecting the determination of what claims must be brought before the foreclosure court and therefore might be subject to Rooker Feldman exclusion - was clarified in the Plaintiff's favor by the New Jersey Appellate Division decision Genid v. JP Mortgan Chase & Company, attached, which concluded that the Plaintiff's claims were permissive joinder claims, and therefore not barred by the failure to raise the issues before the foreclosure court.

This is to certify that this Concise Summary of the Case was electronically filed with the Clerk of the U.S. Court of Appeals for the Third Circuit and a copy hereof served to each party or their counsel of record

this __24__ day of __May__ ,20 __17__ .

## /s/ Joshua W. Denbeaux

Signature of Counsel

Rev. 07/2015

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LAURI GORDON,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br>SETERUS, INC.,<br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION,<br>JOHN DOES I-X,<br><br>Defendants. | Civ. No. 2:16-03093<br><br>ORDER |

THIS MATTER comes before the Court on Defendant BANA's motion to dismiss and Defendants' Seterus and Fannie Mae's motion to dismiss; for the reasons set forth in the accompanying opinion;

IT IS on this 12th day of April 2017, hereby,

ORDERED that Defendant BANA's motion is **GRANTED**; and it is further

ORDERED that Defendants Seterus and Fannie Mae's motion is **GRANTED**; and it is further

ORDERED that all charges against BANA, Seterus and Fannie Mae are **DISMISSED WITH PREJUDICE.**


_____*/s/ William J. Martini*_____
**WILLIAM J. MARTINI, U.S.D.J.**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAURI GORDON,<br><br>        Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br>SETERUS, INC.,<br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION,<br>JOHN DOES I-X,<br><br>        Defendants. | Civ. No. 2:16-03093<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Lauri Gordon brings this action against Bank of America, N.A. ("BANA"), Seterus, Inc., Federal National Mortgage Association ("Fannie Mae") and John Does I-X (collectively "Defendants"), alleging common law fraud, breach of contract, breach of duty of good faith and fair dealing, violation of the New Jersey Consumer Fraud Act, and violation of the Fair Debt Collection Practices Act (15 U.S.C. § 1692), in connection with the foreclosure by Defendants of her property in New Jersey State court. This matter comes before the Court on Defendants' simultaneous motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motions to dismiss are **GRANTED**.

## I.  BACKGROUND

Plaintiff is a New Jersey resident who owns real property in Wyckoff, New Jersey, which is the subject matter of the mortgage in dispute before the Court. First Am. Compl. ("Compl.") ¶ 3, ECF No. 19. BANA is, among other things, a mortgage servicer with its principal place of business in North Carolina and was a prior servicer of Plaintiff's mortgage. *Id.* at ¶ 4. Seterus is a mortgage servicer with its principal place of business in North Carolina and is the current servicer of Plaintiff's mortgage. *Id.* at ¶ 5. Fannie Mae is a mortgage loan company with its principal place of business in Washington, D.C., and is the owner of Plaintiff's mortgage. *Id.* at ¶ 6.

### A.    The Foreclosure Action in New Jersey State Court

This case arises out of a foreclosure dispute that was previously litigated in the Superior Court of New Jersey, Chancery Division. *See* Mem. of Law in Supp. of BANA's Mot. to Dismiss ("BANA's Mot.") 2, ECF No. 22-1. In that case, BANA sought foreclosure of Plaintiff's property after she defaulted on her mortgage. *Id.* at 3. In her answer to BANA's foreclosure complaint, Plaintiff asserted ten affirmative defenses, including unclean hands, fraudulent inducement and fraud in the creation of the mortgage. *See* Certification of Stephen J. Steinlight ("Steinlight Cert."), Ex. B at 5–8, ECF No. 22-3.

In January 2015, BANA moved for summary judgment on the foreclosure action. *See id.*, Ex. C. In her opposition to summary judgment, Plaintiff argued, in pertinent part, that she was not in default because she had entered into and successfully completed a Trial Period Plan ("TPP") Agreement with BANA under the Home Affordable Modification Program. Plaintiff argued that she made timely payments pursuant to the TPP and that she was, therefore, entitled to a modification of her mortgage and was not in default. *See id.*, Ex. D at 4–5. On February 20, 2015, the court issued an order finding that BANA had standing to foreclose and that Plaintiff was not entitled to a modification because she failed to satisfy the terms of the TPP. *See id.*, Ex. F at 2–3. Plaintiff subsequently filed for reconsideration, which the court rejected. *See id.*, Exs. G, J.

As a result of the court's order, the matter was returned to the Office of Foreclosure for issuance of a final judgment. For reasons unknown to the Court, however, BANA never pursued a final judgment and none was given. On October 7, 2016, the matter was dismissed without prejudice for failure to prosecute the claim. Certification of Adam Deutsch ("Deutsch Cert."), Ex. 1, ECF No. 31-1. On or about April 1, 2015, Seterus took over the servicing of Plaintiff's mortgage from BANA. Compl. at ¶ 74.

### B.    The Present Litigation

Plaintiff alleges the following counts:

- Count I: common law fraud against BANA and Fannie Mae, Compl. at ¶¶ 75–85;
- Count II: breach of contract against all Defendants, *id.* at ¶¶ 86–107;
- Count III: breach of duty of good faith and fair dealing against BANA and Fannie Mae, *id.* at ¶¶ 108–24;
- Count IV: violation of New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1(d), against BANA and Fannie Mae, *id.* at ¶¶ 125–37;
- Count V: violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against Seterus, *id.* at ¶¶ 138–56.

Plaintiff asserts that a BANA employee fraudulently induced her to default on her mortgage loan in order to qualify for the loan modification program. *Id.* at ¶ 48. In late December 2009, Plaintiff entered into the TPP Agreement with BANA. *Id.* at ¶¶ 54–56. Plaintiff claims to have made three monthly payments of $1,614.17 in a timely fashion. *Id.* at ¶¶ 63–67. According to Plaintiff, despite satisfying the terms of the TPP, BANA informed her that she was not eligible for a permanent modification. *Id.* at ¶ 70.

On September 21, 2016, BANA moved to dismiss Plaintiff's Complaint, arguing: (1) that the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine; (2) that *res judicata* and collateral estoppel bar Plaintiff's claims; (3) that New Jersey's Entire Controversy Doctrine bars any claim that is "germane" to the foreclosure action; and (4) that Plaintiff fails to state a claim for which relief may be granted. *See* BANA's Mot. at 11. On that same date, Seterus and Fannie Mae jointly filed their own motion to dismiss, in which they raised similar arguments and added that the Court should abstain from hearing the matter pursuant to the *Colorado River* abstention doctrine. *See* Defs. Seterus Inc. and Fed. Nat'l Mortgage Ass'n's Mem. of Law in Supp. of Their Mot. to Dismiss ("Seterus' Mot.") 8–30, ECF No. 23.

Plaintiff opposed dismissal, arguing first that the *Rooker-Feldman* doctrine does not apply in this case because the state court never issued a final judgment in the foreclosure action. *See* Opp'n of Defs.' Mots. to Dismiss the Compl. ("Pl.'s Opp'n") 10–11, ECF No. 31. Plaintiff also opposed Defendants' other arguments. *See id.* at 12–44. BANA, Seterus and Fannie Mae filed replies. *See* ECF Nos. 34, 35.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). There are two types of challenges to subject-matter jurisdiction: (1) facial attacks, which challenge the allegations of the complaint on their face; and (2) factual attacks, which challenge the existence of subject-matter jurisdiction, quite apart from any pleadings. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a factual attack, such as the ones presented here, the court may consider evidence outside the pleadings, and no presumptive truthfulness attaches to the plaintiff's allegations. *Gould Elecs.*, 220 F.3d at 176; *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997). The plaintiff bears the burden of proving that jurisdiction exists. *Gould Elecs.*, 220 F.3d at 178.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542

F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

## III.   DISCUSSION

The Court will first address Defendants' subject matter jurisdiction arguments. Because the Court finds that it lacks subject matter jurisdiction over Counts I–IV of the Complaint, the Court will then address the remaining FDCPA claim against Seterus.

### A.   The *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction over complaints that "essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). "[A] claim is barred by *Rooker-Feldman* under two circumstances: first, if the federal claim was actually litigated in state court prior to the filing of the federal court action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005) (quotation omitted). "A federal claim is inextricably intertwined with an issue adjudicated in state court when: (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *Id.* at 581 (quotation omitted). *Rooker-Feldman* unquestionably applies to state foreclosure proceedings. *See Monclova v. US Bank N.A.*, No. 16-cv-3677, 2017 WL 118015, at *1 (3d Cir. Jan. 12, 2017). The Third Circuit has also expressly held that *Rooker-Feldman* applies to interlocutory orders of lower state courts. *See Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J. Police Dep't*, 973 F.2d 169, 177–78 (3d Cir. 1992).

In light of this understanding, the Court finds that it lacks subject matter jurisdiction over Counts I–IV of the Complaint. The Superior Court's order in the foreclosure action is an interlocutory order that qualifies as a final adjudication on the merits and is, therefore, subject to *Rooker-Feldman* under Third Circuit precedent. *See id.* The court expressly held that BANA had standing to pursue foreclosure, which necessarily means that there was a valid and enforceable contract between BANA and Plaintiff. *See Steinlight Cert.*, Ex. F. The court further held that Plaintiff was ineligible for a permanent modification under the parties' agreement, which negates Plaintiff's argument that Defendants were in breach of the contract. *See id.*, Ex. J. To rule in Plaintiff's favor on Counts II and III, this Court would have to directly contradict the Superior Court's holding that there was a valid contract. *Rooker-Feldman*, therefore, bars Counts II and III.

With respect to Counts I and IV (the fraud claims), the Court finds that any claims sounding in fraud are "inextricably intertwined" with an issue already adjudicated in the

Superior Court, namely the existence of a valid contract. To rule in Plaintiff's favor on her fraud claims, this Court would necessarily have to hold that the TPP Agreement was invalid due to BANA's fraudulent inducement and that BANA lacked standing to foreclose on Plaintiff's property, thereby impermissibly negating the Superior Court's judgment. *See Knapper*, 407 F.3d at 581. Furthermore, Plaintiff raised multiple affirmative defenses sounding in fraud in her answer to BANA's foreclosure complaint, which the court rejected in finding for BANA. *See* Steinlight Cert., Ex. B 6–8. *Rooker-Feldman*, therefore, bars Counts I and IV.[1] Accordingly, Defendants' motions to dismiss Counts I–IV are **GRANTED**, and Counts I–IV are **DISMISSED WITH PREJUDICE.**

## B.    The FDCPA Claim Against Seterus

Count V is not subject to the *Rooker-Feldman* doctrine. Seterus moves to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See* Seterus' Mot. at 28–30. Count V alleges that Seterus violated the FDCPA by sending a letter to Plaintiff, through her attorneys, which sought reinstatement of Plaintiff's mortgage loan, including payment of $390.00 for 26 separate property inspections that supposedly occurred on April 9, 2015. *See* Pl.'s Opp'n at 43. Plaintiff argues that this letter is "an abusive action, attempt to collet [*sic*] money not owed, or both." *Id.*

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Courts analyze communications subject to FDCPA claims under the least sophisticated debtor standard. *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006). "A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* at 455 (quotation omitted).

At the bottom of every page, the letter unequivocally states that it is from a debt collector who is attempting to collect a debt. *See* Compl., Ex. 11. It also clearly states upfront that Seterus was "responding to [Plaintiff's] request for the amount required to reinstate the above-referenced loan to a current status." *Id.* at 1. The letter then itemizes all of the missed payments, taxes, insurance and fees owed in connection with the mortgage. The only charges that Plaintiff alleges are a violation of the FDCPA are the 26 inspection charges. *Id.* at 9.

In the Third Circuit, "a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor; in other words, it must be *material* when viewed through the least sophisticated debtor's eyes." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) (emphasis original). These 26 charges consist of $390.00 out of the total $221,906.10 due on the mortgage. Indeed, Plaintiff implicitly concedes that she accurately owes $221,516.10 on her mortgage. While

---

[1] Because the Court finds that *Rooker-Feldman* applies, it declines to address Defendants' other abstention and preclusion arguments.

likely false and erroneous, the Court nonetheless finds that these 26 charges amount to such a small fraction of what Plaintiff already owes that they cannot be considered material such that they would alter the decision-making process of the least sophisticated debtor. *See id*. Accordingly, Seterus' motion to dismiss Count V is **GRANTED** and Count V is **DISMISSED WITH PREJUDICE**.

## IV.     CONCLUSION

For the reasons stated above, BANA's motion to dismiss is **GRANTED** and all counts against it are **DISMISSED WITH PREJUDICE**.   Seterus and Fannie Mae's motion to dismiss is **GRANTED** and all counts against them are **DISMISSED WITH PREJUDICE**.   An appropriate order follows.

_____/s/ William J. Martini_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 12, 2016**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2570-14T2

YOUSSEF GENID AND LINDA GENID,
Husband and Wife, and their heirs,
devisees, personal representatives,
heirs or any of their successors in
right, title or interest,

      Plaintiffs-Appellants,

v.

J.P. MORGAN CHASE & COMPANY,
J.P. MORGAN CHASE BANK, N.A.
d/b/a CHASE,

      Defendants-Respondents,

and

SETERUS, INC.,

      Defendant.

_____

Submitted May 2, 2016 — Decided  December 12, 2016

Before Judges Nugent and Higbee.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Docket No. L-1192-
14.

Joseph A. Chang & Associates, LLC, attorneys for appellants (Joseph A. Chang, of counsel; Jeffrey Zajac, on the brief).

Parker Ibrahim & Berg, LLC, attorneys for respondents (John M. Falzone and Fred W. Hoensch, on the brief).

The opinion of the court was delivered by

HIGBEE, J.A.D.

Plaintiffs, Youssef and Linda Genid, appeal from both the Law Division's November 13, 2015 order dismissing their complaint for failing to state a claim upon which relief can be granted and January 29, 2015 order denying reconsideration. The case was dismissed on a <u>Rule</u> 4:6-2(e) motion by defendant, J.P. Morgan Chase & Company (Chase Bank), who argued that plaintiffs' claims under the New Jersey Consumer Fraud Act (CFA) were barred by the entire controversy doctrine as set forth in <u>Rule</u> 4:30A.

On appeal, plaintiffs argue the judge erred in finding their claim was "germane" to the prior foreclosure action and plaintiffs were therefore precluded from bringing the instant CFA action. We have considered this argument in light of the record and applicable legal standards and reverse.

We discern the facts from the motion record. On March 15, 2007, plaintiffs executed a note to secure $367,900 with respect to a property in Barnegat, New Jersey. Defendant acquired the note from the original holder the following year. On November 18,

2

A-2570-14T2

2009, defendant filed a foreclosure complaint alleging that Mr. Genid defaulted on August 1, 2009. Mr. Genid never responded to this complaint, and Chase Bank took no further action for several years.

Plaintiffs allege they contacted defendant about the possibility of refinancing when they began experiencing difficulty making loan payments in 2011. Plaintiffs claim defendant informed them no loan modification programs could be offered until a borrower was late on a payment. Plaintiffs further allege they relied on this advice and purposefully defaulted on the loan soon after. Plaintiffs claim that although they dutifully complied with all of defendant's subsequent requests for information for refinancing, they were repeatedly told their application was deficient in some way. In June 2013, defendant ultimately denied plaintiffs' loan modification application.

On February 4, 2014, final judgment was entered by default in favor of Chase Bank in the 2009 foreclosure matter. More than a year later, on July 9, 2015, Mr. Genid moved to vacate the final foreclosure judgment. In support of his motion, Mr. Genid argued defective service prevented him from becoming aware of the foreclosure action until 2014, when he received notice that a sheriff's sale of the mortgaged property had been scheduled. The motion was denied; on appeal, we affirmed the motion judge's

3

A-2570-14T2

conclusion that Mr. Genid had not rebutted the presumption of proper service established by Chase Bank. JP Morgan Chase Bank, N.A. v. Genid, No. A-1230-14T2 (App. Div. Dec. 22, 2015) (slip op. at 9-10).

Plaintiffs initiated the instant case in the Law Division on or about April 28, 2014, several months prior to Mr. Genid's filing a motion to vacate the foreclosure judgment. In this complaint, plaintiffs allege defendant violated the CFA by failing to properly review their application for a loan modification. Defendant filed a motion to dismiss plaintiffs' complaint pursuant to Rule 4:6-2(e). After oral argument, the motion judge granted defendant's motion and dismissed plaintiffs' complaint on November 13, 2014. Plaintiffs' subsequent motion for reconsideration was denied by the motion judge on January 29, 2015. Written opinions accompanied both decisions.

We exercise plenary review of a trial court's grant of a motion to dismiss a complaint under Rule 4:6-2(e) by evaluating the motion under the same standards used by the trial court. Smerling v. Harrah's Entm't, Inc., 389 N.J. Super. 181, 186 (App. Div. 2006). Accordingly, we must determine if after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff" the plaintiff is, nonetheless, not entitled to relief at law. Ibid. "A trial

4

A-2570-14T2

court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) (citations omitted).

Before we can determine if dismissal was erroneous under Rule 4:6-2(e), we turn to the threshold issue. Specifically, the question before us is whether plaintiffs are precluded from bringing a CFA claim related to the 2009 foreclosure in a separate action if they failed to raise it in a counterclaim in the prior action.

Plaintiffs assert the motion judge erred in three ways when dismissing this case. Of the three arguments, two do not warrant substantial discussion. Plaintiffs first argue their claim should not have been precluded because the cause of action had not accrued at the time the foreclosure complaint was filed. We do not address this argument because it was not raised prior to appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Plaintiffs also argue their CFA claim, based on defendant's allegedly improper denial of their loan modification application, should not be precluded by the federal Home Affordable Modification Program (HAMP), a program created by the Emergency Economic Stabilization Act, 12 U.S.C.A. §§ 5201-5261 (2008). This is a response to defendant's contention during oral argument that

5                                    A-2570-14T2

plaintiffs' claim is merely a HAMP claim repackaged as a CFA claim. Indeed, although HAMP does not provide borrowers a private right of action, we have held it does not bar all State law claims. <u>Miller v. Bank of Am. Home Loan Servicing, L.P.</u>, 439 <u>N.J. Super.</u> 540, 547 (App. Div.), <u>certif. denied</u>, 221 <u>N.J.</u> 567 (2015). Moreover, the trial judge did not rely on this theory of claim preclusion in either of his written decisions.

Finally, plaintiffs argue the motion judge erred by finding the CFA claim was "germane" to the foreclosure action, and therefore barred by the entire controversy doctrine. We conclude that regardless of the judge's finding that a CFA claim is "germane," it was error to categorically conclude the entire controversy doctrine bars the claim without further analysis.

<u>Rule</u> 4:30A codifies the entire controversy doctrine as it applies to all types of actions but contains an exception limited to foreclosure actions. It provides: "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by <u>R.</u> 4:64-5 (foreclosure actions)[.]" Thus, it is clear <u>Rule</u> 4:64-5 controls in foreclosure actions. The purpose of this equitable doctrine of entire controversy is "to eliminate delay, prevent harassment of a party and unnecessary clogging of the

judicial system, avoid wasting the time and effort of the parties, and promote fundamental fairness." Aetna Ins. Co. v. Gilchrist Bros. Inc., 85 N.J. 550, 556 (1981) (quoting Barres v. Holt, Rinehart and Winston, Inc., 74 N.J. 461, 465 (1977) (Schreiber, J., dissenting)).

Rule 4:64-5 however modifies the scope of the entire controversy doctrine in foreclosure cases:

> Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees. A defendant who chooses to contest the validity, priority or amount of any alleged prior encumbrance shall do so by filing a cross-claim against that encumbrancer . . ..

On its face, Rule 4:64-5 establishes two categories of counterclaims that may arise in a foreclosure action. First, the rule explains that "non-germane" claims cannot be brought as counterclaims in the foreclosure action, and thus they must be exempt from preclusion under the entire controversy doctrine. For example, because a claim for unpaid rent is non-germane to a foreclosure action, it cannot be joined as a counterclaim in that same foreclosure action; naturally, a later suit for rent would not be barred by the entire controversy doctrine. Luppino v. Mizrahi, 326 N.J. Super. 182, 184-85 (App. Div. 1999).

Plaintiffs first argue the entire controversy doctrine does not affect the instant CFA claim because it was non-germane to the foreclosure case. Both parties acknowledge that there is no published case on point that squarely decides whether a CFA claim is germane to a foreclosure action for Rule 4:64-5 purposes. To determine which types of claims are germane, "a liberal rather than a narrow approach" should be used. Leisure Tech.-Ne. Inc. v. Klingbeil Holding Co., 137 N.J. Super. 353, 358 (App. Div. 1975). Despite explicitly being a rule of limitation, Rule 4:64-5 has been interpreted broadly enough to permit foreclosure defendants to raise defenses to the foreclosure action. See Sun NFL Ltd. P'ship v. Sasso, 313 N.J. Super. 546, 550-51 (App. Div. 1998).

We agree with the motion judge to the extent he found plaintiffs' CFA claim to be germane to the foreclosure action. However, we find his ultimate conclusions to be in error. As explained above, Rule 4:64-5 establishes two categories of counterclaims in foreclosure actions. The second category, "germane" counterclaims, are merely a species of permissive counterclaims. Rule 4:64-5 ("Only germane counterclaims . . . may be pleaded in foreclosure actions without leave of court.") (emphasis added). After determining that plaintiffs' CFA claim was germane to the foreclosure action, the trial judge made a

categorical determination that the CFA claim must therefore have been brought in the foreclosure action: "Plaintiffs' claim is germane to the previous foreclosure action and was therefore properly precluded by New Jersey's Entire Controversy Doctrine. . . . Plaintiffs' desired relief must be found, if at all, in their pending appeal of the denial of their motion to vacate."[1] The motion judge's reasoning for dismissing plaintiff's claim on a <u>Rule</u> 4:6-2(e) motion rested entirely on finding that a CFA claim was barred under the entire controversy doctrine because it was "germane" to the foreclosure action and therefore could have been brought as a counterclaim.

We acknowledge that we have previously stated the "failure to raise the defenses and counterclaims in the foreclosure action very well [may bar] assertion of those claims and defenses in a subsequent action" in the foreclosure context. <u>Sasso</u>, <u>supra</u>, 313 <u>N.J. Super.</u> at 551 (citing <u>Joan Ryno, Inc. v. First Nat'l Bank of S. Jersey</u>, 208 <u>N.J. Super.</u> 562 (App. Div. 1986). However, defendants' reliance on <u>Joan Ryno</u> is misplaced. <u>Joan Ryno</u> involved a foreclosure action followed by a Law Division action in which the foreclosure defendant alleged the plaintiff bank improperly

---

[1]   The appeal mentioned by the judge refers to <u>Genid</u>, <u>supra</u>, No. A-1230-14.  This appeal was denied.

A-2570-14T2

refused to honor a mortgage commitment. 208 N.J. Super. at 566-67. In that case, the trial judge invoked the single controversy doctrine[2] to bar the introduction of evidence of damages incurred during foreclosure. Id. at 567. We held that by barring only some of the damage claims the trial judge defeated the purpose of the entire controversy doctrine. Id. at 571. In so holding, we relied on Hadley v. Baxendale, 9 Ex. 341, 156 Eng.Rep. 145 (1854), and its progeny to bar recovery where damages are too remotely connected to the breach. Joan Ryno, supra, 208 N.J. Super. at 571.

More importantly, the weight of Joan Ryno is further diminished considering the portion of Rule 4:64-5 regarding claim joinder in foreclosure actions was not adopted until September 1992, more than five years after the Joan Ryno decision. While Sasso itself was decided after this date, this case merely quotes Joan Ryno in dicta without reference to the applicable rule.

Beyond this, the parties do not cite any reported cases in which the entire controversy doctrine and Rule 4:64-5 were used to preclude a foreclosure defendant from bringing an arguably germane counterclaim in a separate suit at a later time. Further,

---

[2]    In Joan Ryno, we refer to the "single controversy doctrine"; both names refer to the same doctrine. 208 N.J. Super. at 570, n. 3.

A-2570-14T2

the plain language of <u>Rule</u> 4:64-5 unambiguously establishes counterclaims brought in foreclosures actions must be germane, but that they remain permissive. Nothing in <u>Rule</u> 4:64-5 mandates all germane counterclaims must be brought in the foreclosure action.

The abundance of foreclosure actions has resulted in substantial delays in the resolution of these actions. We conclude that requiring every possible germane counterclaim be raised as part of foreclosure actions is not consistent with the entire controversy doctrine's purpose. In foreclosure actions some litigants may be tempted to file counterclaims only to delay the loss of a property, where they reside at no cost, because they have defaulted on their payments, sometimes for years. In addition, attorneys may feel compelled to raise every possible counterclaim in the foreclosure action to avoid malpractice claims. Requiring a party to raise all possible germane counterclaims would further bog down the foreclosure process in a manner inconsistent with both the text of <u>Rule</u> 4:64-5 and the entire controversy doctrine. <u>Rule</u> 4:64-5 limits the issues that may be litigated within the foreclosure action, and does not require that all germane claims must be raised during the foreclosure action. It was therefore error for the motion judge to categorically conclude the entire controversy doctrine barred plaintiffs' claim merely because it was a germane counterclaim.

A-2570-14T2

As such, we conclude the order dismissing plaintiff's complaint must be reversed.

Reversed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2570-14T2